**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

NORRIS A. HAMMOND,

                Plaintiff,

      v.

MOTORWORLD AUTOMOTIVE
GROUP, INC.,

                Defendant.

CIVIL ACTION NO. 3:25-CV-00491

(MEHALCHICK, J.)

**MEMORANDUM**

*Pro se* Plaintiff Norris Hammond ("Hammond") initiated this lawsuit on March 18, 2025. (Doc. 1). Defendant Motorworld Automotive Group, Inc. ("Motorworld") moved to dismiss the complaint (Doc. 15), but Hammond filed an amended complaint the day before. (Doc. 14). On August 8, 2025, Magistrate Judge Leo Latella filed a report and recommendation in which he recommended the motion to dismiss be denied as moot given the filing of the amended complaint, along with a request for a hearing by Hammond. (Doc. 29). Judge Latella also recommended that Motorworld be directed to file a responsive pleading to the amended complaint within 14 days. (Doc. 29).

Without waiting for the report and recommendation to be ruled upon by this Court, Motorworld filed the instant motion to dismiss on August 20, 2025. (Doc. 30). Neither party has filed objections to the report and recommendation. Having reviewed the report and recommendation for clear error and finding none, the Court will adopt the report and recommendation (Doc. 29) and deny the original motion to dismiss (Doc. 15) and the motion for a hearing (Doc. 21) as moot. For the following reasons, Motorworld's motion to dismiss

the amended complaint is granted, the parties will be compelled to arbitrate all claims contained in the amended complaint, this matter will be stayed pending the final outcome of arbitration proceedings, and the Clerk of Court is directed to administratively close this case. Hammond's motion for leave to file a sur-reply (Doc. 34) is denied as moot.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the amended complaint and, for the purposes of the instant motion, is taken as true. (Doc. 14). In or around January 2025, Hammond applied to purchase a Mercedes-Benz from Motorworld by completing a Credit Application (the "Application"). (Doc. 14, at 2). Motorworld submitted the Application to at least six lenders. (Doc. 14, at 2). The vehicle had a wholesale price of $127,726.00, but Motorworld incorrectly input $12,267.00 in its submissions to the lenders. (Doc. 14, at 2). While some lenders noted the numerical error, none accepted the Application. (Doc. 14, at 2). Motorworld failed to inform Hammond of lender feedback and refused to amend and resubmit the Application. (Doc. 14, at 2). Hammond alleges the following causes of action: Count I – Violation of the Truth in Lending Act; Count II – Violation of the Equal Credit Opportunity; Count III – Fraudulent Misrepresentation; Count IV – Negligent Misrepresentation; Count V – Breach of Contract; Count VI – Unjust Enrichment; Count VII – Conversion; Count VIII – Failure to Return Collateral and Refusal to Set-Off; and Count IX – Deceptive and Unfair Trade Practices. (Doc. 14, at 3-4).

## II.    LEGAL STANDARD

### A. MOTION TO COMPEL ARBITRATION

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, provides a "body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes" and expresses a "strong federal policy in favor of resolving disputes through

arbitration." *Golden Gate Nat'l Senior Care, LLC v. Sulpizio*, No. 1:15-CV-0174, 2016 WL 1271333, at *2 (M.D. Pa. Mar. 31, 2016) (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 522 (3d Cir. 2009)). But, arbitration is still "strictly a matter of contract," so "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999). It follows that, "in deciding whether a party may be compelled to arbitrate under the FAA," consideration is first given to "'(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement.'" *Sulpizio*, 2016 WL 1271333, at *2 (citing *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014)) (citations omitted).

"Questions concerning the interpretation and construction of arbitration agreements are determined by reference to federal substantive law." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25 n.32 (1983)) (citations omitted). "In interpreting such agreements, federal courts may apply state law, pursuant to section two6 of the FAA," and "generally applicable contract defenses may be applied to invalidate arbitration agreements without contravening the FAA." *Harris*, 183 F.3d at 179 (citing *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Perry v. Thomas*, 482 U.S. 483, 492 (1987)).

The Third Circuit clarified the standard of review applicable to motions to compel arbitration in *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 773-74 (3d Cir. 2013). "[W]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or . . . documents relied upon in the complaint)', 'the FAA would favor resolving a motion to compel arbitration under a motion to dismiss standard without the inherent delay

3

of discovery.'" *Guidotti*, 716 F.3d at 773-74 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 479, 482 (E.D. Pa. 2011)) (internal citation omitted).

However, review under the Rule 12(b)(6) standard is inappropriate "when either 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate," *Guidotti*, 716 F.3d at 774 (quoting *Somerset*, 832 F. Supp. 2d at 482), "or the opposing party has come forth with reliable evidence that is more than a 'naked assertion that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did." *Guidotti*, 716 F.3d at 774 (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 55 (3d Cir. 1980)). "Under the first scenario, arbitrability not being apparent on the face of the complaint, the motion to compel arbitration must be denied pending further development of the factual record." *Guidotti*, 716 F.3d at 774. In comparison, when the complaint and documents incorporated therein "facially establish arbitrability but the non-movant" comes forward with sufficient evidence in opposition to the motion to compel to place the question of arbitrability at issue the case falls under the second scenario. *Guidotti*, 716 F.3d at 774. Under both of these scenarios, the motion to compel is to be judged under the Rule 56 standard. *See Guidotti*, 716 F.3d at 774. A "restricted inquiry into factual issues [is] necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate," and the non-movant "must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Guidotti*, 716 F.3d at 774-75 (citations and quotations omitted).

> In short:
>
> when it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an

enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard . . . .

*Guidotti*, 716 F.3d at 776 (internal quotations and citations omitted).

B. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions that are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements that make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of

a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions'. . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting Iqbal, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

## III.   DISCUSSION

First, the Court must determine whether the Application contains an arbitration clause. Then, the Court must address whether it has the authority to interpret and enforce such a clause. The Court notes that the Application was attached to Hammond's original

complaint and referenced throughout Hammond's amended complaint. As such, the Court is able to determine the issue arbitrability under a motion to dismiss standard without the inherent delay of discovery. *See Guidotti*, 716 F.3d at 773-74. There is nothing unclear about the parties' agreement to arbitrate, and Hammond has not placed any facts at issue that would subject the motion to a summary judgment standard or require even limited discovery on the issue of arbitrability.

A. THE APPLICATION CONTAINS AN ARBITRATION CLAUSE.

Motorworld avers that the amended complaint should be dismissed because the Application contains a valid Contract of Arbitration ("Arbitration Clause") and that Hammond's claims fall within the scope of this clause. (Doc. 31, 8-13). Hammond counters that the arbitration provision does not apply because "it was contained in a separate document, not the signed Retail Installment Sales Contract[.]"[1] (Doc. 32, at 2). Hammond further argues that Motorworld never executed the Arbitration Clause. (Doc. 32, at 2). Finally, Hammond asserts that there is no evidence of a bilateral agreement. (Doc. 32, at 2). The Court will address each argument in turn.

The Application, which Hammond signed on January 24, 2025, clearly contains the Arbitration Clause as it is placed under the heading, "IMPORTANT CONTRACT OF

---

[1] Motorworld argues that the Court should not consider this allegation because it was not raised in the amended complaint. (Doc. 33, at 5). Further, Motorworld "vehemently" denies this allegation and asserts that the parties "never entered into a Retail Installment Sales Contract for the purchase of a Mercedes-Benz GLS or any other vehicle." (Doc. 33, at 5 n. 3). Upon review of the amended complaint, the Court notes that Hammond alleges that he "applied to purchase a 2025 Mercedes-Benz GLK Class from [Motorworld] via a *retail installment sales contract*." (Doc. 14, at 2) (emphasis added).

ARBITRATION." (Doc. 31-1, at 6). The first paragraph of the clause states that "[i]f any of us chooses, any dispute between or among us will be decided by arbitration and not in court." (Doc. 31-1, at 6). The Arbitration Clause further provides, in part, that:

> Any claim or dispute, whether in contract, tort or otherwise (including any dispute over the interpretation, scope, or validity of this application and Arbitration Agreement, or the arbitrability of any issue), between you and us or any of our employees, agents, successors, assigns… which arises out o for [sic] relates to this Application or any resulting transaction or relationship arising out of this Application (including any such relationship with third parties who do not sigh [sic] this Application) shall, at the election of either you, us, or a Third Party Beneficiary, be resolved by a neutral, binding arbitration and not by a court action.

(Doc. 31-1, at 6).

Hammond referenced the Application in the amended complaint. (Doc. 14, at 1-5, 7-8). The Court is not persuaded that because the "Retail Installment Sales Contract" did not include the Arbitration Clause, it must not exist. Hammon referenced the Application in the amended complaint, and the Application contains the Arbitration Clause. Thus, the Court rejects Hammond's first argument.

Next, according to Hammond, the Arbitration Clause lacks mutual assent, in part because Motorworld did not sign the Application. (Doc. 32, at 2; Doc. 31-1, at 6). In response, Motorworld argues that by submitting the Application to numerous potential lenders, it assented to the contract. (Doc. 33, at 3). "Parties can manifest their mutual assent through written or spoken words, or through conduct." *Agere Sys., Inc. v. Advanced Env't Tech. Corp.*, 552 F. Supp. 2d 515, 525 (E.D. Pa. 2008) (citations omitted). The Court agrees with Motorworld. Despite the absence of a signature, Motorworld manifested its mutual assent through its conduct. As such, the Court finds that Motorworld assented to the Arbitration Clause. *See Agere Sys., Inc.,* 552 F. Supp. 2d at 525 (noting that, under Pennsylvania law, a

valid and binding contract can be formed even without a signature if the parties manifest their mutual assent to the essential terms of an agreement); *see also Thi of Pennsylvania at Mountainview, LLC v. McLaughlin ex rel. McLaughlin*, No. CIV.A 14-1616, 2015 WL 2106105, at *5 (W.D. Pa. May 6, 2015) (finding parties assented to an arbitration agreement where all essential terms were completed and the missing component was a signature).

Finally, Hammond argues that "[t]here is no evidence of [a] bilateral agreement[.]" (Doc. 32, at 2). Motorworld cites to the amended complaint to show Hammond's admission that the Application is "valid and enforceable for his purposes[.]" (Doc. 33, at 4). Bilateral contracts "are premised on reciprocal promises[.]" *Giant Eagle, Inc. v. Comm'r*, 822 F.3d 666, 673 (3d Cir. 2016). The Application provides:

> IN EXCHANGE FOR THE TIME, EFFORT, AND EXPENSE IN REVIEWING YOUR APPLICATION AND FOR OTHER VALUABLE CONSIDERATION, WHICH IS HEREBY ACKNOWLEDGED, YOU AGREE TO ALL OF THE TERMS OF THE <u>IMPORTANT CONTRACT OF ARBITRATION CONTAINED ON THE REVERSE SIDE OF THIS APPLICATION</u> AND ACKNOWLEDGE THAT YOU HAVE READ AND UNDERSTAND ALL OF ITS TERMS.

(Doc. 31-1, at 6)

By signing the Application, Hammond made a promise to Motorworld. (Doc. 31-1, at 6). Motorworld promised to submit the Application to potential lenders. (Doc. 14, at 2). While Hammond claims that Motorworld allegedly refused to honor the contract, Hammond fails to honor his contractual obligation by initiating "court action," not a "neutral, binding arbitration." (Doc. 31-1, at 6). Given that Hammond and Motorworld made promises to the other party, the Court rejects Hammond's third argument that the Arbitration Clause is defective because no bilateral agreement exists between the parties. (Doc. 32, at 2); *see City of Riviera Beach Gen. Emps. Ret. Sys. v. Mylan N.V.*, No. 2:15-CV-821, 2016 WL 4367549, at *6

(W.D. Pa. May 10, 2016), *report and recommendation adopted*, No. 2:15-CV-821, 2016 WL 4275822 (W.D. Pa. Aug. 12, 2016) ("Bilateral contracts involve two promises and are created when one party promises to do or forbear from doing something in exchange for a promise from the other party to do or forbear from doing something else.").

### B. The Application contains an Arbitration Clause.

As the Application clearly includes the Arbitration Clause, Motorworld asserts that the Arbitrator, not the Court, should determine the arbitrability of Hammond's claims.[2] (Doc. 31, at 8; Doc. 33, at 4). According to Motorworld, the Arbitration Clause contains a clause that delegates disputes about its enforcement to an Arbitrator. (Doc. 33, at 4).

"[C]ontracting parties can agree that arbitrators, not courts, shall resolve arbitrability issues by including in the contract a so-called 'delegation provision' conferring upon the arbitrators the 'exclusive authority' to decide those gateway matters." *MZM Constr. Co., Inc. v. New Jersey Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 399 (3d Cir. 2020). Such a delegation provision is severable and to be reviewed separately from the container contract, in this case the Application. *See Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 446 (2006). "[C]onsistent with the severability doctrine, unless the party opposing arbitration challenges the delegation provision specifically, the district court must treat it as valid and must enforce it by sending any challenge to the validity of the underlying arbitration agreement to the arbitrator." *MZM Constr. Co., Inc.*, 974 F.3d at 399.

---

[2] Hammond does not address whether arbitrability should be decided by the Court or an Arbitrator. (Doc. 32).

10

The Court agrees with Motorworld that the Arbitration Clause contains an unambiguous delegation clause, which delegates "any dispute over the interpretation, scope, or validity of th[e] Application and Arbitration Agreement, or the arbitrability of any issue[.]" (Doc. 31-1, at 6). For reasons already stated, the Court disagrees with Hammond that the Arbitration Clause "suffers from fatal defects." (Doc. 32, at 5). As stated by Motorworld, "[Hammond]'s challenge to the validity and/or enforceability of the Contract of Arbitration in the Application must be decided by the arbitrator and not by this Court." (Doc. 33, at 4).

## IV.    CONCLUSION

Based on the foregoing, the report and recommendation (Doc. 29) is adopted, Hammond's motion for a hearing (Doc. 21) is denied, Motorworld's motions to dismiss (Doc. 15; Doc. 30) are granted, the parties are compelled to arbitrate all claims contained in the amended complaint, this matter will be stayed pending the final outcome of arbitration proceedings, and the Clerk of Court is directed to administratively close this case. Hammond's motion for leave to file a sur-reply (Doc. 34) is denied as moot.

An appropriate Order follows.

**BY THE COURT:**

**Dated: March 10, 2026**

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**

11